# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

NATHAN EVAN GARDNER,      *

      Petitioner,       *

                                 CASE NO. 5:08-CV-900010 HL

vs.                         *           28 U.S.C. § 2255

                                 CASE NO. 5:06-CR-60 HL

UNITED STATES OF AMERICA,   *

      Respondent.      *

## REPORT AND RECOMMENDATION

Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 is before this court for preliminary consideration as required by Rule 4 of the Rules Governing Section 2255 Proceedings For The United States District Courts.

## Procedural History

The Record reflects that on June 22, 2006, Petitioner Gardner waived Indictment, entered into a Plea Agreement with the Government, and pled guilty to one Count of an Information charging an offense relating to activities constituting a violations of the child pornography statute 18 U.S.C. § 2252(a)(4)(b). He was sentenced on June 28, 2007, to a term of imprisonment of 60 months to be followed by 60 months supervised release. No direct appeal was filed in the case. However, on March 25, 2008, Petitioner Gardner timely filed a Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255.

## Petitioner's § 2255 Claims

Gardner alleges ineffective assistance of counsel as his **Ground One**, stating:

> Counsel violated due process in plea negotiations, improperly raised diminished capacity, failed to raise proper sentencing factors at sentencing, and exhibited unprofessional & deceptive conduct.

As his **Ground Two**, Petitioner contends breach of Plea Agreement stating:

> Petitioner pled guilty on the basis of a promise that he would only receive up to three years of supervised release.  Petitioner  has received five years of supervised release which is outside the range promised, thus breaching Petitioner's plea agreement.

As his **Ground Three**, Petitioner Gardner contends that, "The United States Government lacked jurisdiction to prosecute (his) case."

## Evidentiary Hearing

An evidentiary hearing was held on Petitioner's Motion on August 26, 2008 and transcribed (Doc. 65).  While Petitioner's hearing counsel reserved the right to file a post-hearing brief within 30 days after receipt of the Transcript of this hearing, he has elected not to do so, which is his right.  Counsel may rely on the pleadings and the evidence presented at hearing.

## Discussion

Petitioner's **Ground Three** contention that the Court lacked jurisdiction to prosecute this action was not addressed at the hearing and will be addressed as presented in Petitioner's Memorandum (Doc. 39).   Petitioner Gardner pitches his claim of lack of jurisdiction claim on an alleged Fourth Amendment violation.  At pages 28 and 29 of his Memorandum (Doc. 39), Gardner sets out that on April 25, 2005, two federal agents approached the residence where he lived with his grandmother and asked about Petitioner's whereabouts.  Upon being advised that he was away at college, the agents gave Petitioner's grandmother their business card and asked that she call them when he returned home.[1]  Petitioner's grandmother called the agents as requested when she went to

---

[1]By affidavit attached to Petitioner's Memorandum, Ms. Dillard adds, "Later that day, I called the number on the business card and told them that I was leaving to go pick up Nathan from College.  I picked up my grandson and told him that there were some FBI agents looking to speak with him."

2

pick Petitioner up from college.  The agents were waiting in front of the residence when Gardner arrived with his grandmother. "While these agents were in conversation (with Gardner), they followed Mr. Gardner into Ms. Dillard's house.  Before the agents conducted their investigation, they commented to Ms. Dillard that it would be appropriate if she left. She *agreed* and left the residence." *Id.* at 29, emphasis added.  Petitioner Gardner is contending that the agents entered Ms. Dillard's residence without consent.  Citing *United States v. Medina,* 451 F.Supp. 2d 262 (D.Mass., 2006), Petitioner Gardner states,  "This Fourth Amendment violation clearly strips the government of any jurisdiction as the illegal entry into the dwelling not only <u>mandates</u> a reversal, but a suppression of all statements of evidence seized under the Fruits of the Poisonous Tree Doctrine." *Id.* at 30.  To the contrary, the entry was not illegal.  It is obvious that Ms. Dillard knew that the FBI agents intended to talk to Petitioner Gardner and that they were, in fact, doing so when they followed him into her residence.  She made no objection, but tacitly consented to the interview being done in her residence rather than in front of her house.  She even *agreed* to leave the residence to allow them to have their conversation in private.

As to the Fruits involved, at hearing on Petitioner's § 2255 Motion, he stated unequivocally that he consented to handing over the computer and that he consented to handing over a compact disc.  (Doc. 65 at 27).   Moreover, Petitioner Gardner entered into a Plea Agreement with the Government wherein he stipulated the following:

> The defendant stipulates and agrees that the computer he used to access child pornography may be destroyed by the Federal Bureau of Investigation. ... The parties agree and stipulate that the present offenses involve at least 300, but less than 600 images of child pornography as contemplated by U.S.S.G. § 2G2.2(b)(7)(c).

(Doc. 4 at Section (3)(J) and (K).  Still further, Petitioner Gardner's Plea Agreement contained the

following stipulation at Section (7) on page 8 thereof:

> [T]he United States Attorney and the defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:
>
> (A) In the Tampa, Florida area, an individual using the screen name "teenboy 18" distributed child pornography in interstate commerce by transmitting such material via the internet.
>
> (B) A search by the Federal Bureau of Investigation (F.B.I.) of the computer belonging to "teenboy 18" revealed email addresses belonging to NATHAN EVAN GARDNER.
>
> (C) On April 25, 2005, NATHAN EVAN GARDNER was interviewed by a Special Agent of the F.B.I. in Warner Robins, Georgia. NATHAN EVAN GARDNER admitted using his computer to obtain child pornography. The email addresses he used for that purpose were "daviddupress18@yahoo.com" And "daviddupree19@aol.com" . NATHAN EVAN GARDNER gave the agents consent to remove his computer and a compact disc.

There is no dispute that Petitioner Gardner signed the Plea Agreement and initialed every page thereof freely and voluntarily. At his Plea hearing before Judge Fitzpatrick on June 22, 2006, (Doc. 36), while considering accepting Petitioner's guilty plea, Judge Fitzpatrick asked, "Now, are you sure that this is the best thing for you to do in your own mind, enter this plea, Mr. Gardner?" Petitioner Gardner answer, "Yes, Your Honor." *Id.* at 2. The Court proceeded to asked the following:

> Do you realize that you could end up on a list of ... people involved with child abuse ... and where you live could be involved and affected ... have you thought this case and have you discussed it with Ms. Caputo?

To which, in every instance, Petitioner answered, "Yes, Your Honor." *Id.* at 3. Furthermore, Petitioner answered that he was satisfied with Ms. Caputo and that he "absolutely" thought that she was a good lawyer. *Id.* at 4. When the Court stated, "I want to know what you think for your own

self?", Petitioner Gardner answered, "Your Honor, I plead guilty.  And I do own up to the mistakes

that I have made.  I do realize now, when I look back, that what I did was wrong."  *Id.* at 6.

This Court must conclude, contrary to Petitioner's present contentions, that this case does

not involve any Fourth Amend violations,  and that there is no question that, under  Title 18, United

States Code, Section 2252(a)(4)(B), this Court at all times relevant, had jurisdiction over this

prosecution.   Petitioner's **Ground Three** is without merit.

As his **Ground Two,** Petitioner Gardner asserts that:

> Petitioner pled guilty on the basis of a promise that he would only
> receive up to three years of supervised release.  Petitioner has received
> five years of supervised release which is outside the range promised,
> thus breaching the Petitioner's plea agreement.

(Doc. 38 at 6).  In his Memorandum, Petitioner Gardner contends:

> This agreement provides a condition that the Petitioner would <u>only</u>
> receive "a term of supervised release of three (3) years.  *Plea*, *Id.* at
> 3(B).  Contrary to this agreement, Mr. Gardner was sentenced to five
> (5) years supervised release on June 28, 2007.  Moreover, the
> Assistant United States Attorney failed to raise the issue that this was
> repugnant to what was agreed upon in the agreement.

(Doc. 39 at 27).   Petitioner exercises a loose definition of the word promise.  The only mention of

*supervised release* in Petitioner's Plea Agreement (Doc. 4) is found in Section (3) which reads:

> Defendant being fully cognizant of defendant's rights, and in exchange
> for the considerations to be made by the United States as set forth in
> paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of
> Criminal Procedure, as follows:
>      (A) The defendant is guilty and will knowingly and voluntarily
> enter a plea of guilty to Count One of the information which charges
> defendant with possession of child pornography, in violation of 18 U.
> S. C. § 2252(a)(4)(B).
>      (B) The defendant fully understands that defendant's plea of
> guilty as set forth in Subparagraph (A), above, will subject defendant
> to a maximum sentence of ten (10) years imprisonment, a maximum

fine of $250,000.00, or both, and a term of supervised release of three (3) years.

The Government's promises or *quid pro quo* are contained, as stated above, in Section (4) of the Plea Agreement and make no reference to any limitation of supervised release in any sentence the Court might determine. The *promise* made by the Government relating to a sentence by the Court is found at Section (4)(c) of the Plea Agreement, which reads:

> [T]he United States Attorney will make a non-binding recommendation that the defendant be sentenced to the lower end of the applicable guideline range.

Moreover, the Plea Agreement repeatedly reminds Petitioner that, "Nothing herein limits the sentencing discretion of the Court." (Doc. 4 at 8; Plea Agreement, Section (5)). Section (3)(c) of the Plea Agreement states:

> The defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office.

Likewise, Section (3)(D) provides:

> The defendant understands fully and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigation report has been completed.

Section (3)(E) of the Plea Agreement provides:

> Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

Petitioner Gardner's allegation of breach of the plea agreement because the Court exercised its discretion to sentence him to a five year period of supervised release instead of a three year period

6

is frivolous in view of the numerous admonitions in the Plea Agreement that no estimate of the sentence guideline range was binding on the court.   Petitioner Gardner could not have reasonably understood anything other than, "Nothing herein limits the sentencing discretion of the Court."  Plea Agreement, Section (5).   Petitioner's Ground Two claims have no merit.

Petitioner Gardner states as his **Ground One** that:

> Ineffective assistance of counsel. Counsel violated due process in plea negotiations, improperly raised diminished capacity, failed to raise proper sentencing factors at sentencing, and exhibited unprofessional and deceptive conduct.

(Doc. 38 at 5).  Since Petitioner had two attorneys representing him through his plea and sentencing process, his Memorandum and the § 2255 hearing transcript will have to be consulted to determine which counsel he contends was ineffective and on what issues.

On page 6 of his Memorandum (Doc. 39), Petitioner Gardner states:

> Based on counsel's advise, Mr. Gardner entered his plea of guilty on June 22, 2006, in belief that he would be receiving two to three years imprisonment, a minimum security classification (camp), and a condition to voluntarily surrender.  (See: *Exhibit 'A'*).

The Exhibit 'A' to which Petitioner refers in support of this contention is the handwritten note of Attorney Rachael Caputo, who first represented Petitioner before bad health forced her to withdraw.  The note is no more than unsigned notations, the intent or conclusions of which are not stated.  It contains the following:

---

*§ 2255(a)(4)(B)*                              *600 plus images*
 *fined or imprisoned not more than*
 *10 yrs*

*Base offense level 18          § 2G2.2*

7

```
=========notation deleted=============
2G2.2(6)² use of comp. Increase by 2 levels
        600 + images increase by 5 levels              (22)
    3 level decrease   acceptance of responsibility

    ====notation deleted====        22 level
                                                        3
    argue diminished capacity           (20) - 33-41

    18 - 24 mts.  prison
```

_____

    While this handwritten note of Petitioner's Counsel is difficult to interpret, it in no way supports Petitioner's claim that his counsel *promised* him that he would serve no more two to three years.  The note is more susceptible to the interpretation that counsel had identified the criminal statute charged and the statutory maximum 10 year sentence that it carried upon conviction; and that she was making preliminary guideline range calculations.  The remainder of the notations do not indicate anything more than that counsel was trying to make a sentence range calculation at an unknown  time with the increase/decrease information she could only conjecture at that time.  It is impossible to reconcile how she got from the noted Base offense level of 18 to a level 22 with the notations she included.  The notation "argue diminished capacity" indicates that a possible strategic motion for a downward departure from the U.S.S.G. § range, but just how much is impossible to say by the terms of the Plea Agreement itself.  As noted above, the Plea Agreement is replete with admonitions that the Court was not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office.

    Petitioner Gardner's complaint that his attorney committed due process violations in the plea

_____

[2]U.S.S.G. § 2G2.2(6) provides: If the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, increase by **2** levels.

8

negotiation process is not supported by rational evidence, particularly in view of the fact that Petitioner voluntarily relinquished the computer and disc containing pornographic images to the FBI investigators, leaving no other interpretation than that he was guilty of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(b).

Petitioner's Gardners second contention of ineffective assistance of counsel, to wit., that his counsel improperly raised diminished capacity, and failed to raise proper sentencing factors at sentencing, likewise is refuted by the evidence.  First, Petitioner's first Attorney, Ms. Caputo, stated her strategy in mitigating Petitioner's sentence, stating at the § 2255 hearing on August 26, 2008, that:

> I felt our strongest case would be of a departure based on diminished capacity because of Mr. Gardner's own personal experiences, and that just –that's where I started the negotiations ....

(Doc. 65 at 55).  Both Ms. Caputo and Judge Fitzpatrick, who was obviously impressed by Mr. Caputo's strategy, left the case for health reasons, and the case then fell to Judge Lawson for sentencing after full consideration of the record and preparation of a PSI by the Probation Office. At the sentencing hearing conducted by Judge Lawson on June 28, 2007, he put to rest any concerns about a psychosexual examination being of aid to the court in consideration of sentencing Petitioner Gardner.  Judge Lawson stated:

> I am familiar with the record here. I do not believe that a psychosexual evaluation is necessary for the conclusion of this matter by this judge, and for that reason, the motion for psychosexual evaluation is overruled.

(Doc. 58 at 13).   At that point, Petitioner's replacement Attorney, Ms. Hogue, attacked the PSI attribution of 5 points pursuant to guideline 2G2.2(b)(7)(D), and succeeded in getting the five points

reduced to four as was supported by the Information and Plea Agreement count of 300 pornographic images and less than 600. *Id.* at 13, 14).   Thereafter, Attorney Hogue presented a very forceful and successful argument for a downward departure from the Guideline range of sentence, which included arguments of diminished capacity and other sentencing factors made relevant by 18 U. S. C. § 3553(a).   After extensive prefatory argument (*Id.* at 21-23), Ms. Hogue stated:

> With respect to diminished capacity .... Nathan Gardner was a child, substantially motivated by having been molested as a child, acting substantially younger than his stated age, so his ability to understand that his behavior was wrong, his ability to exercise the power of reason or to control his behavior was as significantly impaired as any child that would come before this court.
>   What he did, Your Honor, was to receive naked pictures of children, download them, and save them.  Why he did what he did is because he was a 19 year old with the mentality and maturity, as has already been presented to this court previously in the prior hearing, of a 13 to 14 year old child, his entire sexuality shaped by having been molested repeatedly by the only adult male figure in his life.
>   He had not been taught that pornography was wrong.  To the contrary, he had been taught that pornography was stimulating and it was provocative, and it was the way he could be with the only adult – sick as it was – figure that presented himself in his life.

*Id.* at 23, 24.   In conclusion of her downward departure argument, Ms. Hogue added:

> For those reasons, Your Honor, for whatever heading you want to place upon it – – diminished capacity, departure for mitigating circumstances, or simply a conclusion that 70 to 87 months for this offense with this defendant is not an appropriate administration of justice – – we ask the court to sentence outside the advisory guideline range in a way that will serve justice, serve the community, and hopefully return Nathan Gardner as a developing and functioning young man to this community.

*Id.* at 27.   Although the Government strenuously objected, and cited tenable authority, the Court considered all the mitigating factors and granted Ms. Hogue's requested downward departure, sentencing Petitioner Gardner upon his conviction of possession of child pornography to a term of

only 60 months, when his sentence could defensibly have been 27 months longer.   Petitioner

Gardner's claim of ineffective assistance of counsel  for the strategical argument of diminished

capacity under the circumstances and his claim that the appropriate sentencing factors were

disregarded is ill-conceived and meritless.

Finally, Petitioner's claim that his counsel exhibited unprofessional and deceptive conduct is

vague, conclusory,  and unsupported by the evidence.   Petitioner Gardner bases this claim on events

surrounding his first sentencing attempt which was aborted by Judge Fitzpatrick who felt that he

needed more information regarding "child pornography and pedophilia." (Doc. 39 at 24).   Petitioner

does not appreciate that when Judge Fitzpatrick was forced out of the case by health concerns, the

case  management fell to the discretion of Judge Lawson, and Judge Lawson did not feel the need for

more information which might have been furnished via a psychosexual evaluation, as noted above.

The fact that Ms. Caputo was unable to locate a psychosexual evaluator in the Atlanta area, prior to

her leaving the case for her health reasons is of no consequence to Petitioner's ultimate sentence for

Possession of Child Pornography.   Petitioner Gardner states:

> Adding to these injuries Mr. Gardner endured, Mr. Gardner shows
> this Honorable Court that his counsel deceived him from the beginning
> of this case.   Her unprofessional conduct is not limited to lying and
> procrastinating.   Her unprofessional conduct is limitless to injuring her
> very client by inviting a recycle of abuse that she pretended to protect.
> For the sake of this motion, this is just a partial list of the
> ineffectiveness, injustice, and unprofessional conduct displayed by his
> counsel.

(Doc. 39 at 25, 26).   Petitioner Gardner's claims of deception and unprofessional conduct address

issues that are not germane to the issues before this court.   Moreover, they are too vague and

conclusory to merit any remedy or relief in this action.   "Conclusory allegations of ineffective

assistance are insufficient. *United States v. Lawson,* 947 F.2d 849, 853 (7th Cir. 1991)." *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992).

### The Standard for Determining Ineffective Assistance of Counsel

To establish a claim for relief based upon ineffective assistance of counsel, Petitioner must meet the two pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984). (1) Petitioner must show that his counsel's representation was deficient and (2) Petitioner must show that this deficient representation prejudiced Petitioner. *Strickland,* 466 U.S. at 687; see *Baxter v. Thomas,* 45 F. 3d 1501, 1512 (11th Cir. 1995). The two-pronged *Strickland* test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S. Ct. 366 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same: the attorney's conduct must be shown to have fallen outside the range of reasonable conduct. *Hill,* 474 U.S. at 58. Counsel need only provide a client who pleads guilty with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. *Wofford v. Wainwright,* 748 F. 2d 1505, 1508 (11th Cir. 1984). The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill,* 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, Petitioner must show that there is a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.*

Sound tactical decisions within the range of reasonable professional competence are not vulnerable to collateral attack. See, e.g. *Weber v. Israel,* 730 F. 2d 499, 508 (7th Cir. 1984) (choosing a defense is a matter of trial strategy), cert denied, 469 U.S. 850, 105 S. Ct. 167 (1984); *United*

*States v. Guerra,* 628 F.2d 410, 413 (5th Cir. 1980), cert denied. 450 U.S. 934, 101 S. Ct. 1398

(1981).  A tactical decision amounts to ineffective assistance of counsel "only if it was so patently

unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright,* 709 F.2d

1443, 1445 (11th Cir. 1983), cert denied, 464 U.S. 1063, 104 S. Ct. 745 (1984); accord *Strickland*

*v. Washington,* 466, U.S. 668, 690 (1984).

Tactical decisions made by counsel do not render assistance ineffective merely because, in

retrospect, it is apparent that counsel chose the wrong course; *Adams v. Balkcom*, 688 F. 2d 734, 739

(11th Cir. 1982); see also *Alexander v. Dugger,* 841 F. 2d 371, 375 (11th Cir. 1988).  Thus, a court

deciding an ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on

the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland,* 466 U.S. at

690.

The Eleventh Circuit Court of Appeals stated in *Rogers v. Zant,* 13 F.3d 384, 386 (1994):

> The cases in which habeas petitioners can properly prevail on the
> ground of ineffective assistance of counsel are few and far between.
> "The benchmark for judging any claim of ineffectiveness must be
> whether counsel's conduct so undermined the proper functioning of
> the adversarial process that the trial cannot be relied on as having
> produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686,
> 104 S. Ct. 2052, 2064 (1984). To establish prejudice, the Petitioner
> must "show that there is a reasonable probability that, but for
> counsel's unprofessional errors, the result of the proceedings would
> have been different." *Id.* at 694..... When reviewing whether an
> attorney is ineffective, courts "should always presume strongly that
> counsel's performance was reasonable and adequate."  *Atkins v.
> Singletary*, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should
> be highly deferential to those choices ... that are arguably dictated by
> a reasonable trial strategy." *Devier v. Zant*, 3 F.3d 1445, 1450 (11th
> Cir. 1993).  Even if many reasonable lawyers would not have done as
> defense counsel did at trial, no relief can be granted on ineffectiveness
> grounds unless it is shown that no reasonable lawyer, in the
> circumstances, would have done so.  This burden, which is petitioner's

to bear, is and is supposed to be a heavy one.

Petitioner Gardner does not claim that he would have gone to trial but for his counsel's conduct, or that any specifically different representation would have altered the outcome of his case. He has failed to carry his burden of proof that his counsel was ineffective or that there was any error in his conviction and sentence.   His Motion fails to state any claim upon which this court may grant relief.  *See* 28 U. S. C. § 2255(a).

**WHEREFORE, IT IS RECOMMENDED** that Petitioner's Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be DENIED.  Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner and/or the Government may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 15th day of December 2008.


**S/ G. MALLON FAIRCLOTH**
**UNITED STATES MAGISTRATE JUDGE**